## PEOPLE v. MEYER.

(Court of General Sessions, New York County. October 27 1914.)

1. DISORDERLY HOUSE ⇐⇒17—OFFENSES—EVIDENCE.

In a prosecution, under Laws 1903, c. 436, for knowingly frequenting a house of prostitution, evidence *held* insufficient to show that accused was guilty.

[Ed. Note.—For other cases, see Disorderly House, Cent. Dig. §§ 26–29; Dec. Dig. ⇐⇒17.]

2. DISORDERLY HOUSE ⇐⇒7—FREQUENTING—KNOWLEDGE—OFFENSES.

Guilty knowledge on the part of defendant that the premises were conducted as a house of prostitution is an essential to conviction of a woman for violating Laws 1903, c. 436, prohibiting women from frequenting such premises.

[Ed. Note.—For other cases, see Disorderly House, Cent. Dig. § 7; Dec. Dig. ⇐⇒7.]

Edna Meyer was convicted of a violation of Laws 1903, c. 436, in that she was found in a reputed house of prostitution, and she appeals. Reversed and remanded.

Jos. Du Vivier, Dep. Asst. Dist. Atty., of New York City, for the People.

John D. Stephanidis, of New York City, for defendant.

ROSALSKY, J. The defendant, a female, aged 29 years, was adjudged guilty in the Magistrates' Court of a violation of chapter 436 of the Laws of 1903, and the acts amendatory thereof, in that on the

20th day of July, 1914, in the county of New York, she was found in a reputed house of prostitution, and she was committed to the New York Magdalen Benevolent Society for a term of three years.

[1, 2] The only testimony on this appeal, which the court can consider as the basis of the conviction of the defendant, is that of the police officer, which is as follows:

"Q. State the circumstances. A. I entered the premises— * * * A. At 10:20 the night of July 20th, in company with witness Chultz, I entered the premises 242 West Forty-Ninth street, and walked up one flight of stairs and rang—witness Chultz rang the door bell of the premises on the second floor west. The defendant Parvis came to the door and witness Chultz said— Q. Well you and Chultz were admitted to the apartment? A. Yes. Q. And when you went into the parlor you saw two or three women there? A. We saw this defendant and the defendant Parvis. Q. Didn't you see the defendant Camille? A. The defendant Camille ushered us into the apartment. Q. So that when you went into the parlor you saw the last defendant, Parvis, and this defendant there? A. Yes. Q. Go ahead; tell what happened while you were there. A. I sat on a couch on the west side of the room, and the defendant Camille sat down beside me, and after witness Chultz ordered the wine the defendant Camille stood up, and when she was about to leave the apartment to get the wine she said to this defendant, who was sitting in the room, 'Why don't you go over and sit beside the gentleman?' This defendant rose, she was sitting on a chair, and came over and sat beside me, and we had a talk on general topics until the defendant Camille came back with the wine. Q. When the defendant Camille came back with the wine, what happened after that? A. She served the wine, and I stood up and walked over to defendant Camille and said, 'Haven't you got another girl here? I don't like this defendant Meyers.' And she said, 'No, I have not;' but she said, 'I will go with you.' So she and I left the apartment and went to the bedroom, and the defendant Camille and I went into the bedroom. Q. Tell me what transaction you had with Camille in the bedroom. A. We entered the bedroom, and she took this kimono off, or night gown, and asked me how long I wanted to stay. I said, 'For a short time.' She said, 'A short time is $10.' I then placed her under arrest. Q. You placed Camille under arrest? A. Yes; I ushered the defendant Camille to the front of the apartment; then I walked back and opened the door where the defendant Parvis and witness Chultz had gone into and placed the defendant Parvis under arrest. Q. Then you came back? A. Yes; I came back and placed this defendant under arrest, and ushered her into the front and raised the window, and whistled into the street for Officer Jones and Officer McDonough to come up. Q. Who told this defendant to sit beside you? A. The defendant Camille."

At the conclusion of the officer's testimony counsel for the defendant moved to dismiss the charge, upon the ground that there was no proof that the defendant had any knowledge that the apartment was conducted as a house of prostitution.

It is impossible to read the record in this case without reaching the conclusion that the defendant was convicted without proof tending to show either that she directly or inferentially had guilty knowledge that the premises in which she was found were conducted as a house of prostitution. The testimony of the officer is silent as to whether or not the defendant overheard what he said to Camille, or what she said to him. It must be assumed that the conversation which the officer had with Camille was at some distance from where the defendant sat as the officer left her and walked over to Camille, who thereupon proposed to accompany him to the bedroom. The record is also silent as

to whether the defendant saw the officer and Camille enter the bedroom. There is not the slightest suggestion in the officer's testimony that the defendant conducted herself in a lewd or indecent manner, nor that any other person in the apartment committed any such act in her presence, nor that she made any indecent proposal to the officer while engaged in conversation with him. On the contrary, the officer testified that he talked with her on general topics.

Guilty knowledge on the part of the defendant that the premises are being conducted as a house of prostitution is one of the essential and main elements constituting the offense of which the defendant was adjudged guilty, and without it no conviction can be sustained. People v. Miller, 81 App. Div. 255, 80 N. Y. Supp. 1070. As it is to the interest of society to endeavor to recast the moral fiber of an erring female, so that she may be restored to a useful position in the community, the courts should be reluctant to thwart or impede the operation of the statute under which the defendant was committed. But it would not be consistent with the proper security of personal liberty to permit this conviction to stand, for it would establish a precedent whereby any female under the age of 30 years would be exposed to the danger of being sentenced to an institution for 3 years, who, without guilty knowledge on her part, is found in a house of prostitution upon an innocent mission.

As I am strongly in sympathy with the beneficent purposes of this statute, I shall order a new trial, in order to afford the people an opportunity of establishing, if they can, that the defendant had guilty knowledge that at the time she was found in the premises they were conducted as a house of prostitution.

The judgment of conviction is therefore reversed, and a new trial granted.